IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KIMBERLY BROWN,                       )
                                      )
            Plaintiff,                )
                                      )
      v.                              ) Civil Action No. 07-0859
                                      )
J. KAZ, INC.,                         )
                                      )
            Defendant.                )

MEMORANDUM and ORDER

Gary L. Lancaster,
District Judge.                                    May 9, 2008

     This is an employment discrimination case.  Plaintiff,

Kimberly Brown, claims that J. Kaz, Inc., doing business under

the fictitious name of Craftmatic of Pittsburgh (hereinafter

"Craftmatic"), discriminated and retaliated against her, and

harassed her due to her race in violation of Title VII of the

Civil Rights Act of 1967, the Pennsylvania Human Relations Act,

and 42 U.S.C. § 1981.  Before the court is Craftmatic's motion

for summary judgment [doc. no. 22].  Because we find that Brown

was an independent contractor, rather than an employee, we have

no subject matter jurisdiction over the Title VII and PHRA

claims, and dismiss the same, with prejudice.  In addition, we

grant Craftmatic's motion for summary judgment as to the section

1981 claim because no reasonable juror could find in Brown's

favor under any applicable legal standard.

## I.  FACTUAL BACKGROUND

The following facts are undisputed, unless otherwise indicated. We construe all other facts in the light most favorable to Brown, the non-moving party. We discuss additional facts throughout the memorandum, where applicable. The facts material to the legal issues to be decided in ruling on Craftmatic's motion are not in dispute.

Brown responded to a newspaper advertisement seeking sales representatives in the summer of 2006. She called the toll-free number listed in the ad and spoke with Craftmatic's Recruiting Manager, Jay Morris, regarding the sales position. Brown and Morris spoke over the phone on more than one occasion. Judging Brown to be interested in the position and able to speak well during these phone calls, Morris invited Brown to attend a three day training session in Pittsburgh from August 8, 2006 to August 10, 2006. Brown lived in Cleveland, Ohio.

Brown rode a commercial bus from Ohio to Pennsylvania because she is afraid of tunnels and does not like driving in unfamiliar places. Brown attended the training session with two other people, Ronald Gibbs and Daryl Rinehart, both Caucasian. Craftmatic's Training Manager, Daniel Pesta, conducted the training session. During the training session, the recruits were introduced to the product they would be selling and Craftmatic's

2

business practices, including the paperwork they would have to complete in order to close a sale, and the commission system.

Craftmatic sales representatives visit potential customers' homes to demonstrate and attempt to sell Craftmatic adjustable beds. Home visits could occur anywhere within 100 miles of the representative's permanent residence. Representatives are required to pay a deposit for the equipment used during the sales calls, and to provide their own transportation to the appointments, a facsimile machine, a portable TV/DVD player, and other equipment. Sales representatives were paid on a commission basis, but could also earn $50 for each completed sales presentation. They were not reimbursed for any expenses incurred in connection with making sales calls. Sales representatives were responsible for all taxes and had to pay for their own health insurance premiums and liability insurance.

On the final day of training, August 10, 2006, Brown signed Craftmatic's Independent Contractor's Agreement. Pesta had given Brown, and the other recruits, a copy of the agreement to take to the hotel with them the evening before, and Brown had an opportunity to ask questions before she signed it the next day at the final training session. Brown understood the terms of the agreement.

3

On August 10, 2006, the final day of training, the recruits were taking a break on the outside deck of the Craftmatic building. At some point during the break, Morris walked out onto the deck with Diane Kugler, Craftmatic's Service Manager. Morris shook hands with Gibbs and Rinehart and exchanged pleasantries with them. When he extended his hand to Brown, she refused to shake it, the exact reason being unclear, but irrelevant for our purposes. There is no dispute that Morris asked Brown to shake his hand more than once, and Brown refused each time. There is also no dispute that a heated verbal exchange ensued between the two, the exact details of which are in dispute. However, there is no dispute that Morris used a derogatory racial epitaph during the exchange. There is also no dispute that the two engaged in some discussion about slapping or hitting people, although it is unclear, but irrelevant, as to who initiated this topic of discussion.

After this verbal altercation, the three recruits returned to the training room. As Morris walked through the training room he advised Brown that he did not want her to represent Craftmatic. Morris then reported the incident to the owner of Craftmatic, John Girty, and told him that he did not want Brown to be a Craftmatic representative. Pesta, at some point that morning, also had a discussion with Girty about Brown. Although

4

it is unclear exactly what complaints Pesta expressed to Girty about Brown's training performance and transportation situation, there is no dispute that Pesta agreed that Brown should not be a Craftmatic sales representative. Based on his discussions with Morris and Pesta, Girty decided not to allow Brown to act as a Craftmatic sales representative. In making this decision, Girty was concerned about Brown's attitude and behavior based on the incident on the deck and about Brown's fear of driving in unfamiliar places. Pesta informed Brown of Girty's decision. Thereafter, Craftmatic gave Brown a check to reimburse her for the expenses she incurred in attending the training session and provided her transportation back to the bus station.

## II.   STANDARD OF REVIEW

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather must go beyond the pleadings and present "specific facts showing that there is a genuine issue

5

for trial." Fed. R. Civ. P. 56(e).

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e. the material facts, however, will preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. Id. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. Id. at 248-49. Under these standards, the non-moving party must do more than show there is "some metaphysical doubt" as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Although inferences must be drawn in favor of the non-moving party, "an inference based upon speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990). Similarly, the non-moving party cannot rely on unsupported assertions, conclusory

6

allegations, or mere suspicions in attempting to survive a summary judgment motion. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)); see also Lujan v. National Wildlife Fed., 497 U.S. 871, 888 (1990) ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint ... with conclusory allegations of an affidavit").

The non-moving party has the burden of producing evidence to establish each element of her claim. Celotex, 477 U.S. at 322-23. The non-movant must show more than "[t]he mere existence of a scintilla of evidence" for elements on which she bears the burden of production. Anderson, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec., 475 U.S. at 587 (citations omitted).

In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute or whether the evidence is so one-sided that the movant must prevail as a matter of law because no reasonable jury could return a verdict in her favor.

7

III.  DISCUSSION

## A.  Title VII/PHRA: Independent Contractor Status

Brown contends that she was harassed, discriminated against, and retaliated against in violation of Title VII, and the PHRA. Brown's PHRA claims are judged under the same legal standards applicable to her Title VII claims. Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996). Under Title VII, and therefore the PHRA, this court does not have jurisdiction unless Brown can establish that she is an employee, as compared to an independent contractor. Walters v. Metropolitan Educ. Enters., 519 U.S. 202, 211 (1997) (applying Darden factors to Title VII case); E.E.O.C. v. Zippo Mfg. Co., 713 F.2d 32, 35 (3d Cir. 1983).

Title VII does not define the terms "employee" or "independent contractor." Therefore, courts use the common-law agency test to determine a complainant's status. Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323-24 (1992). Darden teaches us to assess the following twelve factors, none of which is in and of itself dispositive, in determining whether a person is an employee or an independent contractor: (1) the skill required to perform the job; (2) the source of the instrumentalities and tools necessary to perform the work required; (3) the location of the work; (4) the duration of the relationship between the

8

parties; (5) whether the hiring party has the right to assign additional projects to the hired party; (6) the extent of the hired party's discretion over when and how long to work; (7) the method of payment; (8) the hired party's role in hiring and paying assistants; (9) whether the work is part of the regular business of the hiring party; (10) whether the hiring party is in business; (11) the provision of employee benefits; and (12) and the tax treatment of the hired party. Id. These factors are meant to determine whether, and to what extent, the hiring party has the right to control the manner and means by which the hired party achieves her goal. Id.

Under this test, upon consideration of the circumstances of this case, we conclude that Brown cannot meet her burden to establish that she was an employee of Craftmatic. As such, this court does not have subject matter jurisdiction over Brown's Title VII or PHRA claims, and we must dismiss all of them, with prejudice.

Before considering each of the twelve factors, we address the contract signed by the parties on the final day of training. Brown signed a document entitled "Independent Contractor's Agreement." She had been given a copy of the agreement the day before, examined it at the hotel that evening, and had an opportunity to ask questions about it the next day before signing

9

it.  Brown confirms that she read and understood the terms and conditions of the Independent Contractor's Agreement.

The agreement consistently and clearly reflects the parties' intention that Brown would act as an independent contractor, not an employee, of Craftmatic.  Her insistence to the contrary is in direct conflict with the terms of the agreement.  No reasonable juror could conclude that two parties who executed a document entitled "Independent Contractor's Agreement," under which the contractor was required to pay her own taxes, liability insurance, and business expenses, and would be paid on solely a commission basis, actually intended to create an employment relationship.

Nevertheless, because the terms of a contract are not controlling, we have considered each of the twelve Darden factors.  See Holtzman v. The World Book Co., Inc., 174 F.Supp.2d 251, 256 (E.D. Pa. 2001) (collecting cases).  Upon doing so, we conclude that despite Brown's subjective belief that she was an employee, a reasonable jury could only find that the legal reality of her status was that of an independent contractor.  In particular, we find that the second, third, fourth, fifth, seventh, eighth, eleventh, and twelfth factors favor characterizing Brown as an independent contractor.

Brown was required to provide her own equipment, such as a

10

fax machine and TV/DVD player. She used her own car to travel to and from appointments. Although Craftmatic provided her with contract forms, DVD's, and a massage demonstration tool, these were specialized items associated with the product that Brown was selling on behalf of Craftmatic. All standard office equipment and supplies were Brown's responsibility. Brown would perform her sales work at potential customers' homes, and out of her own home and car. There is no indication that she had office space at any Craftmatic location. Brown had only been associated with Craftmatic for a matter of days before the relationship was terminated. Under the Independent Contractor's Agreement, either party could terminate the relationship by written or oral notice, which termination would become effective immediately. According to the record, the only projects that Craftmatic could assign to Brown were sales appointments and presentations. As already discussed, pursuant to contract, Brown was to be paid on a commission only basis. Although there is evidence that under one payment program she could be paid a flat fee for each sales presentation completed, this was simply another type of commission payment. Brown acknowledges that she was not permitted to hire any assistants. Finally, Brown was required to pay for her own health care benefits, liability insurance, and taxes.

11

In contrast, we find that only the first, sixth, ninth, and tenth factors weigh in favor of Brown being characterized as an employee of Craftmatic. The job of outside salesperson is not particularly skilled, although, we note, is often performed by independent contractors. Craftmatic controlled the scheduling of Brown's sales appointments. While the Independent Contractor's Agreement states that representatives are not assigned to any specific territory or work hours, the record reflects that, in practice, representatives were assigned sales appointments within 100 miles of their residence by a centralized scheduling service. This system gave Craftmatic control over when and where Brown would work, and for how long each day. In addition, Craftmatic was in the business of selling adjustable beds, and Brown was hired to do exactly that.

On balance, the majority of Darden factors support a finding that Brown was an independent contractor. In addition, under the totality of the circumstances, we conclude that Craftmatic did not have a right to control the manner and means by which Brown accomplished her sales tasks. To be sure, Craftmatic forbade their representatives from making misleading statements to customers, required them to refrain from violating consent decrees, suggested appropriate descriptions of its beds, and required that their DVD's and paperwork be used at sales

12

calls. We consider these controls to be the minimum that a corporation needs to maintain the quality of its product and services, and consistency in its business practices. See <u>Kahn v. Am. Heritage Life Ins. Co.</u>, 324 F.Supp.2d 652, 656-57 (E.D. Pa. 2004). The reality is that Brown would have completed her sales calls on a daily basis without supervision. She was given authority to negotiate price, within reasonable confines. Although given guidance on what techniques might be successful, she was the one who would decide how to sell the beds to her customers.

Based on the record before us, we conclude that Brown has failed to meet her burden to establish that she was an employee of Craftmatic. The majority of the <u>Darden</u> factors support this conclusion, as does the totality of the circumstances, and the terms and conditions of the written agreement between the parties. Because Brown has not established that she was an employee, this court has no subject matter jurisdiction over her Title VII and PHRA claims. Therefore, all such claims are dismissed with prejudice.

B.  Section 1981 Action

The Court of Appeals for the Third Circuit has held that the elements of an employment discrimination claim brought under section 1981 are identical to those of a claim brought under Title VII.  Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 486, 498-99 (3d Cir. 1999).  Although our court of appeals has yet to rule on the issue, we find that there is no requirement under section 1981, however, that the complainant proves that she was an employee, instead of an independent contractor, under section 1981.  See Taylor v. ADS, Inc., 327 F.3d 579, 581 (7th Cir. 2003); Webster v. Fulton County, Ga., 283 F.3d 1254, 1257 (11th Cir. 2002).  Brown asserts claims of race discrimination, hostile work environment, and retaliation.  We consider the viability of each cause of action below.

## 1. Discrimination

Brown claims that her relationship with Craftmatic was severed on her last day of training because of her race. In support of her theory, Brown points to the racial comments[1] Morris made during their argument on the deck. Craftmatic contends that it is entitled to summary judgment on this claim because Brown cannot prove that the reasons for its decision were pretextual, under the McDonnel Douglas test. Brown argues that she can prove pretext, but that, regardless, she is entitled to proceed under the less burdensome Price Waterhouse test. Because we find that no reasonable juror could find in favor of Brown under either theory, we enter summary judgment in favor of Craftmatic on the discrimination claim.

---

[1] There is some dispute in the record as to exactly how many racially charged comments Morris made to Brown during their verbal altercation, and in what context. Morris claims that he used only one, and in the context of explaining to Brown that refusing to shake his hand was as offensive to him as being called the "N-word" would be to an African American. In contrast, Brown claims that during the argument Morris stated that "Well, you ain't nothing but the N word" and shook his head in agreement when she asked him if he was calling her a "nigga". In addition, Brown claims that Morris stated that "Well, you ain't nothing but a black person anyway" after she refused to shake his hand. Construing the facts in the light most favorable to Brown, we will conclude for purposes of this motion that Morris made both the "N-word" and the "black person" comments as detailed by Brown during the argument.

15

Brown claims that we should apply the Price Waterhouse mixed-motives test to her claim of racial discrimination. According to Brown, because she has produced direct evidence that race was a motivating factor in Craftmatic's decision, Craftmatic has the burden to prove that it would have taken the same action, independent of the alleged race discrimination. Fakete v. Aetna, Inc., 308 F.3d 335, 338 (3d Cir. 2002) (citing Price Waterhouse v. Hopkins, 490 U.S. 228, 265-66 (1989)). Under this test, Craftmatic need not isolate the sole cause for its decision; rather it must demonstrate that with the illegitimate factor removed from the calculus, sufficient business reasons would have induced it to take the same employment action. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 147-48 (3d Cir. 2004). This evidentiary scheme essentially requires Craftmatic to place Brown in the same position she would have occupied absent discrimination. Id.

As an initial matter, we will assume for purposes of this discussion, that Brown has produced direct evidence of discriminatory attitudes about race that were causally related to Girty's decision to sever Craftmatic's relationship with her. Fakete, 308 F.3d at 338. Proceeding under this test, Craftmatic must prove that it would have made the same decision regardless of Brown's race. We find that Craftmatic has satisfied this

16

burden, and that no reasonable juror could find to the contrary.

The testimony is undisputed that Girty made his decision regarding Brown's future with Craftmatic after speaking with Morris and Pesta. Girty's concerns after talking to them were two-fold: first, that, based on the altercation on the deck, Brown would exhibit inappropriate behavior in a customer's home, and second, that Brown, who admittedly does not like to drive in unfamiliar places, could not perform the job of a traveling sales representative. Girty never talked with Brown about his concerns before he made his decision. This may show poor judgment, but such deficiencies are not relevant to our determination. Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).

Instead, we must determine whether Girty would have made the same decision if Morris's racial comments were taken out of the equation. We find a reasonable juror could only find that he would have. Had Morris uttered no racial slurs during the argument, but reported the same incident to Girty, Girty would have been equally concerned with Brown's attitude and behavior. Girty must send sales representatives into his customers' homes and would be justifiably concerned that one of them would participate in a heated verbal exchange, even if the other person initiated the argument, and/or used inappropriate language, of whatever nature, during it. Especially in such high stress

17

situations, Girty would need to be comfortable knowing that his sales representative could remove himself or herself from the altercation swiftly and without escalating it. In addition, Girty consulted with Pesta, who is alleged to have no racial animus against Brown, who agreed that Brown should not be permitted to act as a sales representative. Presumably Pesta's recommendation itself, as the training manager, would have supported Girty's decision. There is no reasonable conclusion other than that Girty's decision would have been the same regardless of Brown's race.

As such, even if we applied the Price Waterhouse test, as requested by Brown, we would conclude that no reasonable juror could find in her favor. Given that we reach this conclusion under the test more favorable to Brown, we similarly find that no reasonable juror could find in Brown's favor under the McDonnell Douglas test. Under that test, Brown must discredit the reasons Girty gave for his decision, or otherwise prove that discrimination was the real reason for his decision. Jones v. School Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999); Fuentes, 32 F.3d at 764. Contrary to Brown's position, she cannot discredit Girty's concerns about placing a volatile sales representative in customers' homes, or having a sales representative who could not drive into unfamiliar places on a

18

regular basis. These concerns were legitimate, reasonable, and supported by the evidence Girty had gathered from Morris and Pesta when he made his decision. Brown has offered no other evidence to prove that racial discrimination was the real reason for Girty's decision. Thus, Brown's racial discrimination claim fails under this test as well.

Because no reasonable juror could find in Brown's favor on her section 1981 race discrimination claim under either potentially applicable legal theory, we enter summary judgment in favor of Craftmatic.

### 2. Hostile Work Environment

To establish a case for a hostile work environment under Title VII, Brown must show that: (1) she suffered intentional discrimination because of her race; (2) the discrimination was pervasive and regular; (3) it detrimentally affected her; (4) it would have detrimentally affected a reasonable person of the same protected class in her position; and (5) there is a basis for vicarious liability. Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001). Because Brown cannot establish, at least, the second element of this cause of action, we must enter summary judgment in favor of Craftmatic.

The evidence is undisputed that Brown's only evidence of racial hostility or discrimination is the racial slurs Morris used during the argument on the deck. This argument occurred on the last of a three day training session, and lasted for a short time. Brown contends that she also was the victim of racial discrimination on the first day of training when Morris allegedly referred to her as "a problem" and said that she asks a lot of questions. These comments are not evidence of racial harassment. As an initial matter, although several other people were present when these comments were made, some of whom are no longer associated with Craftmatic, Brown is the only one who claims the comments were made. In addition, despite Brown's allegations, there is no racial component to these comments - they could have been based on Brown's gender, or on her age, or been a joke based on the fact that she, in fact, asked a lot of questions. Without more, these innocuous comments are not evidence of racial harassment.

Therefore, Brown's hostile work environment claim is supported only by racial comments made by Morris during an argument that occurred on the last day of a three day training session. With this evidence, Brown cannot establish that the discrimination was pervasive and regular. Especially in the instance of a professional relationship that lasted only three

days, a reasonable juror would require the instances of harassment and discrimination to be constant, continuous, and overwhelming in order to satisfy this element. One verbal argument is not pervasive and regular conduct. Moreover, we note that all other witnesses testified that they had never experienced a racially hostile environment during their years of working at the Craftmatic offices.

Based on this record, no reasonable juror could find that Brown has established, at least, that the harassment and discrimination was pervasive and regular. As such, we must enter summary judgment in favor of Craftmatic on Brown's section 1981 hostile work environment claim.


### 3. Retaliation

Although it appears that Brown has abandoned this cause of action, to be thorough, we will consider whether any reasonable juror could find in her favor on it at trial. To establish a case of retaliation under Title VII, Brown must show that: (1) she engaged in a protected activity under Title VII; (2) she suffered an adverse action; and (3) there was a causal connection between the protected activity and the adverse employment action. Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006) (citation omitted). Protected activity includes

participation in certain Title VII proceedings (the "participation clause") and opposition to discrimination made unlawful by Title VII (the "opposition clause"). Slagle v. County of Clarion, 435 F.3d 262, 266 (3d Cir. 2006). Brown has no evidence that she engaged in protected activity, and therefore, we must enter summary judgment in Craftmatic's favor on this claim as well.

In her complaint, Brown alleges that "she engaged in protected activity by objecting to Morris's racially-based comments and harassment and refusing to ignore same." Complaint at ¶ 41. However, the record does not establish that Brown participated in any protected activity. Instead, the record reflects that Brown took part in a heated verbal argument with Morris, during which Morris used racial epitaphs. While we presume that Brown did not accept or embrace the offensive comments that Morris made to her, no reasonable juror could find that being involved in the argument constituted protected activity.

There is no dispute that Brown did not notify any other Craftmatic official about the argument, or her objections to Morris's offensive language, before she was informed that she would no longer be associated with Craftmatic. She likely did not have a chance to do so even if she wanted to, as she was

informed of Girty's decision shortly after the argument occurred. But, regardless, because no reasonable juror could find that Brown engaged in any protected activity, we must enter summary judgment in Craftmatic's favor on Brown's section 1981 retaliation claim.

IV.   CONCLUSION

Because Brown has failed to establish that she was an employee of Craftmatic, she cannot assert any claims under Title VII or the PHRA.   Those claims are dismissed with prejudice. Although her section 1981 claim does not require that Brown prove that she was an employee, it fails for other reasons.   No reasonable juror could find in Brown's favor on any of the legal causes of action she has advanced under the statute.   As such, we must enter summary judgment in Craftmatic's favor on Brown's section 1981 claim.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KIMBERLY BROWN,                    )
                                   )
            Plaintiff,             )
                                   )
      v.                           ) Civil Action No. 07-0859
                                   )
J. KAZ, INC.,                      )
                                   )
            Defendant.             )

ORDER

AND NOW, this 19 day of May, 2008, IT IS HEREBY
ORDERED that defendant's motion for summary judgment [doc. no.
22] is GRANTED, in part.

All claims asserted under Title VII or PHRA are DISMISSED
for want of subject matter jurisdiction, with prejudice;

Judgement is entered in favor of defendant J. Kaz, Inc. on
the remaining section 1981 claim; and

The Clerk of Court is directed to mark this case closed.

BY THE COURT:

cc: All Counsel of Record